Argued January 8, decided February 25, rehearing denied March 25, 1913.

### DEVLIN v. MOORE.

(130 Pac. 46.)

**Banks and Banking—Money Lent—Right of Action.**

Where a bank loaned a sum to four persons, including some of its officers, for financing a corporation in which they were interested, by issuing certificates of deposit in consideration of a purported purchase of bonds which were in fact merely held by the bank as security, though appearing on its books as having been purchased, such persons were bound in equity and good conscience to account to the bank for the money so advanced.

From Multnomah: WILLIAM N. GATENS, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Thomas C. Devlin, receiver, against the defendants W. H. Moore, Henry A. Moore, S. W. Stryker, G. L. Estes, W. Cooper Morris, E. E. Lytle, Leo Friede, and J. F. Reddy. The lower court dismissed the suit as to the defendants Lytle, Friede, and Reddy, and

entered a decree against the other defendants for $14,500, from which they all appeal, except W. C. Morris.

This case was consolidated for trial in the court below with that of *Devlin, Receiver,* v. *Moore,* 64 Or. 433 (130 Pac. 35), and the evidence was taken as for one case. Many of the legal propositions presented apply equally to both cases. Therefore what we have said in the opinion in the principal case need not be repeated here. In what is termed in the briefs as the Pacific & Eastern suit, the allegations of the complaint are in substance as follows: That some time between January 1, 1907, and May 27, 1907, the defendants conspired to use the funds of the Oregon Trust & Savings Bank to acquire the property of the Medford & Crater Lake Railroad Company for their own use and profit. That as to the defendants E. E. Lytle, H. A. Moore, and Leo Friede it is averred that all the transactions set forth were matters of common knowledge. That the defendants either joined in the conspiracy or were guilty of gross negligence or inattention to their duties as directors of the bank. That the Crater Lake Railroad Company was organized prior to January 31, 1907, and that it executed a first mortgage on all its properties for $45,000 to one C. A. Dewing. That in a suit in Jackson County defendant Reddy was appointed receiver. That the mortgagee was not a party to such suit.

The complaint further alleges that the Estacada State Bank was an organized state bank, with a capital stock of $20,000, of which defendant Geo. L. Estes was president, and defendant Stryker a director, and that the two dominated such institution; that defendant Reddy was also a stockholder in the Oregon Trust & Savings Bank during all the time that he was receiver of the Crater Lake road; that pursuant to the alleged conspiracy the parties thereto caused the defendant Reddy, as receiver, to make application for an order for the sale

of the properties of the Crater Lake railroad; that such order was entered, and, the properties being offered for sale, defendant Estes bid $82,500 for the same, subject to a first mortgage of $45,000; that this was reportèd to the court, the bid accepted, and an order made directing the receiver to convey the properties to Estes upon payment of such sum; that Estes had no money or means with which to purchase; that in payment of the purchase price the president and cashier of the Oregon Trust & Savings Bank issued to the receiver Reddy a certificate of deposit for $81,500, and a cashier's check for $1,000; that to cover the issuance of the check and certificate of deposit there was entered in the account of the Oregon Trust & Savings Bank a fraudulent and fictitious entry to bonds and warrants of $41,250, and there was also entered for a like amount a certificate of deposit issued by the bank of Estacada in favor of the Oregon Trust & Savings Bank. It is averred that the certificate of the Estacada Bank was issued fraudulently, and that the same was of no value; that the Pacific & Eastern Railway Company was afterwards organized with a capital stock of $1,000,000, divided into shares of the par value of $100 each; that the defendants Estes, Stryker, Morris, and W. H. Moore each subscribed for 1,250 shares, and that the first three were elected as directors; that the stockholders authorized the issuance of bonds on all the properties of the Pacific & Eastern, and that thereafter the Crater Lake road, purchased from the receiver Reddy, was conveyed by Estes to the Pacific & Eastern; that a trust deed or mortgage upon the railroad properties was authorized and executed to the Oregon Trust & Savings Bank, trustee, to secure an issue of $1,000,000 in bonds; that a considerable part of the bonds was issued; that between the 28th day of May, 1907, and the 21st day of August, 1907, the officers of the Pacific & Eastern Railway Company drew out of the Oregon Trust &

Savings Bank $18,500 of its funds, and took over and appropriated the same to the use and benefit of the officers, directors, and stockholders of the Pacific & Eastern. It is further alleged that bonds to the par value of $100,000 of no value, were deposited with the Oregon Trust & Savings Bank as security for the certificates of deposit, loans, and advances; that bonds to the amount of about $50,000 were placed in the Estacada Bank as security for the certificates of deposit issued to the Oregon Trust & Savings Bank; that thereafter, pursuant to an order of the court, plaintiff Devlin surrendered to the Estacada Bank the certificate for $41,250, in consideration of the release of an apparent balance due the Pacific & Eastern Railway Company upon an open account, and surrendered to receiver Reddy the $100,000 bonds of the Pacific & Eastern in consideration of the surrender by Reddy to the plaintiff of the certificate of deposit of the Oregon Trust & Savings Bank for $81,500; that that is all that was recovered; that the loss to the Oregon Trust & Savings Bank was $18,500 drawn out and converted to the use and benefit of the officers, directors, and stockholders of the Pacific & Eastern Railway Company; that the Medford & Crater Lake Railroad Company's properties were worth not to exceed $50,000; that Estes executed a conveyance of the Crater Lake Road properties in consideration of the issuance to the defendants Estes, Stryker, Morris, and W. H. Moore of $500,000 of the capital stock fully paid up and non-assessable, divided equally between these four men; that between that time and the failure of the bank the defendants interested in the railroad company, through its agency, withdrew from the funds of the Oregon Trust & Savings Bank $13,500; that a cashier's check issued at the time of the purchase of the road was cashed by defendant Reddy as receiver; that the plaintiff in effecting a settlement by which he obtained a cancellation of

the certificate of deposit issued to Reddy was compelled to pay $1,000 out of the funds of the receivership estate. The defendants filed pleas in abatement which were tried, and a decree rendered, identical with the decree in the principal case. The answers interposed in this case by the defendants are in their essential respects the same as those interposed in the main case.

On the part of defendants the following facts are claimed: That the Pacific & Eastern Railway Company was worth from $125,000 to $150,000; that, in addition to the $50,000 which the four men agreed to furnish, it was intended to borrow a sufficient amount to put the plant in good shape, and to either operate or sell it; that something over 11 miles of road had been constructed, graded, tied, and ironed; that from the day of the organization of the Pacific & Eastern Railway Company it was a going concern and constantly grew stronger; that the evidence shows that there was a considerable amount of money put into the enterprise by the parties, and that ultimately other parties came in and purchased large blocks of the stock; that the road has ever since been a paying proposition, meeting all of its obligations, and that plaintiff could have recovered from it every dollar that it owed the bank; that he failed and neglected to do so, and, instead, turned the whole matter over to the German-American Bank under its purchase of Oregon Trust & Savings Bank assets; that the German-American Bank made a settlement of the matter, whereby it surrendered to receiver Reddy the $100,000 in bonds in consideration of the return of the $81,500 certificate of deposit, and as a part of the transaction surrendered to the Estacada Bank its certificate of deposit for $41,500 in consideration of the surrender by the Estacada Bank of certain claims it held against the Oregon Trust & Savings Bank. It is admitted on the part of W. H. Moore and Morris that it was not a wise step for them to take

because they were directors of the Oregon Trust & Savings Bank, but that it was not in violation of their duties or fraudulent; that the advances made to the Pacific & Eastern Railway Company were made on the strength of the Estacada Bank certificate of deposit which was surrendered without any attempt to collect the advances made on the open account; that $5,000 of the $18,500 balance against the Pacific & Eastern was a commission charged by the bank against the Pacific & Eastern as a discount on the $100,000 in bonds, which should be deducted therefrom.                              MODIFIED.

For appellants, Walter H. Moore and Henry A. Moore, there was a brief and an oral argument by *Mr. Charles W. Fulton.*

For appellant, S. W. Stryker, there was a brief and an oral argument by *Mr. Frank Schlegel.*

For appellant, George L. Estes, there was a brief by *Messrs. Sweek & Fouts.*

For respondent, Thomas C. Devlin, there was a brief with oral arguments by *Mr. Alfred E. Clark* and *Mr. Martin L. Pipes.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears from the evidence that George Estes was employed by the Oregon Trust & Savings Bank from November 1, 1906, until May, 1907; that Estes was secretary, treasurer, and manager of the Pacific & Eastern Railway Company; that each of the four men interested agreed to pay $12,500 into the corporation. Estes testified that he and Dr. Stryker paid in approximately $9,000 to liquidate some of the floating indebtedness. In regard to the adjustment involving the bonds of the Pacific & Eastern, he stated that it was a three-cornered settlement, and that the bonds held by the Estacada Bank were surrendered to the Oregon Trust & Savings Bank or to its receiver; that the Oregon Trust returned the

certificate of deposit to the Estacada Bank, and that thereupon the bonds of the Pacific & Eastern, amounting to approximately $150,000, were surrendered to J. F. Reddy, receiver, in consideration of the certificates of deposit issued by the Oregon Trust & Savings Bank of $81,500.

The situation and transactions relative to the Pacific & Eastern were complicated, and contemplated deals, hindered and delayed by the financial panic of 1907, during which time most of the banks in this State were closed, from about the 28th day of October, 1907, until the latter part of December of that year, during which time so-called "bank holidays" were proclaimed by the Governor of this State. It appears that the purchase of the Pacific & Eastern Railway was a personal transaction. The sum of $14,327.69 advanced by the Oregon Trust & Savings Bank was a loan to and for the benefit of the four men, Morris, W. H. Moore, Estes, and Stryker. The bonds held by the bank, while appearing on the records as a purchase, were in reality security for the money advanced and credit extended by the Oregon Trust & Savings Bank. The bank was not to make any profit on the bonds. The promoters and owners of the road hoped to profit by the deal. They were practically doing business in the name of the Pacific & Eastern Railway Company. The certificates of deposit for $81,500 and the check for $1,000 were issued by the Oregon Trust & Savings Bank before the Pacific & Eastern was in existence. W. H. Moore testified in regard to this deal as follows:

"Well, these certificates were put up for the four parties. * * It was the intention all the time, it was for the four. We were not organized at that time, but intended to organize, which was done in a few days. * * If we bought now before we organized, we would pay for it as four as you will see, paid for it after the organization would be paid for as a corporation by the same parties."

In equity and good conscience these four men should be answerable for the loan. In disposing of the Pacific & Eastern bonds held by the bank as security, the receiver was able to realize only the amount of the certificates of deposit leaving the account, $13,327.69, and check for $1,000 still unpaid. Negotiations for this arrangement were pending for some time, and it appears that the receiver obtained the largest amount possible. It does not appear that the four promoters of the Pacific & Eastern Railway Company had any objections to this adjustment.

It seems that Mr. Estes acted for the Estacada State Bank in making the adjustment, whereby that bank had the certificates of deposit for $41,500 returned to it. Mr. Estes was also manager of the Pacific & Eastern Railway Company, and it is not to be presumed that he took any action against the interests of his associates. All the parties interested in the Pacific & Eastern seem to have been anxious to obtain all the bonds of the corporation so that a sale of the railroad might be made to eastern parties, which sale was afterwards accomplished. We cannot understand how the releasing of securities given by these four defendants by the receiver could in any way prejudice their rights. They had each obtained $12,500 par value of shares of stock in the Pacific & Eastern Railway Company with the money and credit furnished to them by the Oregon Trust & Savings Bank, without, in the first instance, paying a dollar of their own money. The surrender of the bonds of the Pacific & Eastern which was accomplished in the adjustment was an advantage to them. Evidently the $50,000 in bonds held by the Estacada Bank could not be delivered without a surrender of the certificate of deposit for $41,250. This certificate of deposit appears to have been issued as security for one-half of the original purchase price of the road, and in lieu of payment therefor, by defendant Estes

and Stryker. It was issued to the Oregon Trust & Sav-. ings Bank to be used as a basis of the certificate of deposit issued by that bank in payment for the road.

It does not appear from the evidence that Henry A. Moore was connected in any way with this deal, and we do not think that the allegations of the complaint are sustained as to him. We find that they are sustained by the evidence as to defendants W. H. Moore, S. W. Stryker, and George L. Estes in regard to the $14,327.69, cash advanced (including the cashier's check which was paid). Interest should be computed on this sum from August 21, 1907. These defendants at the time the so-called adjustment was made and the certificates of deposit were surrendered must have known that there had never been any money deposited in the Oregon Trust & Savings Bank in connection with the Pacific & Eastern deal, and that the bank was not indebted to the Pacific & Eastern. They should not be allowed to profit by obtaining possession of the certificates of deposit based upon an erroneous account in the books, whereby it appeared that the Oregon Trust & Savings Bank was indebted to the Pacific & Eastern Railway Company on an open account, and thereby escape paying the amount justly due. This would be as unconscionable and inequitable as it would be to allow one who had been paid $100.00 by mistake in counting money to retain the same. The receiver swears that he did not know that the credit appearing on the books in favor of the Pacific & Eastern was based on the certificate of deposit of the Estacada State Bank. It appears that on December 17, 1907, when the Estacada Bank certificate was surendered, the receiver was paid $827.69. This amount should be credited by plaintiff as of that date.

Defendants claim that there should be an additional credit of $4,416.49, an account of claims against the Oregon Trust & Savings Bank held by different corporations and individuals which were settled and canceled.

We think that these claims were liquidated in another transaction pertaining to the Pacific & Eastern note, and should not be allowed as a credit on this claim.

The decree of the lower court will be modified in accordance herewith.                                    MODIFIED.