Argued February 17, affirmed March 30, rehearing denied April 27, 1920.

# MOORE v. MOORE.

(188 Pac. 696.)

**Evidence—Statements of Ancestor Admissible Against Heir Claiming Under Him by Descent.**

1. Statement of deceased on supplementary proceedings against him, that he had settled with his partners and received all his interest in the partnership, is admissible against his heir suing for a partnership accounting, under the rule that when admissions of an ancestor would be admissible against him, if living, they are admissible against an heir claiming under him by descent.

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.

This is a suit for an accounting of a partnership. The essential elements of the complaint are as follows:

Walter H. Moore died on December 15, 1913, leaving as his heirs a son, the plaintiff, two grand-children, the offspring of a deceased daughter, and his widow, the defendant Laura H. Moore. On January 8, 1917, the plaintiff was appointed administrator of the estate of Walter H. Moore, and was thereafter appointed administrator of the partnership estate. Walter H. Moore and the defendant H. A. Moore were brothers, and defendants Laura H. Moore and America Moore are the wives, respectively, of the two brothers. Laura H. being the stepmother of the plaintiff. The complaint avers that certain properties described therein are the partnership properties of Moore Brothers, and seeks to have them so declared and to secure an accounting from the defendant H. A. Moore. The property consists of farm lands in Eastern Oregon, city property in Portland and Vancouver, Washington, corporation stock, bills receivable and other assets; the legal title to some of the partnership properties having been transferred to the defendants Laura H. and America Moore in trust for the partnership.

The defendants filed a joint answer in which they admit the partnership, but allege that it was dissolved prior to the year 1913 (August 30, 1907), and that all of the interest of Walter H. Moore in the partnership property was at that time disposed of by him, a portion being transferred to Thomas C. Devlin, receiver, and the remainder he agreed to transfer to the defendants H. A., Laura H., and America Moore. The defendants deny that Walter H. Moore had any interest in any of the properties at the time of his death. The answer also pleads four affirmative defenses: First, that all of the property standing in the name of the Moore Investment

Company is the property of that corporation, and that all of the stock of the Moore Investment Company and the Moore Realty Company belongs to the persons in whose names the same now stands, and that Walter H. Moore has not had any interest in such property since 1907 or 1908. Second, that in June, 1913, certain judgments were entered and docketed in the Circuit Court for Multnomah County, against Walter H. Moore and in favor of Thomas· C. Devlin,· as receiver of the Oregon Bank & Trust Company, aggregating about $60,000, upon which executions were returned to the effect that no property had. been found, and thereafter, upon proceedings supplementary to execution Walter H. Moore was at various times examined as to whether he had any property subject to execution, and testified that he had no property whatever, and thereafter, by reason of the intimate relationship of these defendants with Walter H. Moore, they agreed with the receiver to convey to him certain properties belonging to them in full satisfaction of such judgments, so far as they affected Walter H. Moore, and the agreement was fully carried out, although these defendants were not parties to the judgments and under no legal obligation to pay them. Third, that for a number of years prior to 1907, Walter H. Moore was president of the Oregon Bank & Trust Company, which, in the fall of 1907, became unable to meet its obligations, and Thomas C. Devlin was appointed its receiver; that various transactions of Walter H. Moore in connection therewith were severely criticised and it was asserted that large losses had occurred through his misconduct, and he was desirous of making such restitution as lay in his power, so he proposed to the defendants that

he should withdraw all of his interests in the partnership and convey the same to Devlin for the benefit of the bank, and they assenting to this, joined him in conveyances of certain property to Devlin, which property, it was agreed, included all of his interest in the partnership, and that in consideration of such action, Walter H. Moore conveyed or agreed to convey to defendants all his interest in the residue of the partnership assets, and such agreement was afterward fully carried out. The fourth affirmative defense refers to community property acquired by the husbands and their wives in the State of Washington.

A reply joined issue with the affirmative answers and a trial was had, resulting in a decree dismissing the suit and plaintiff appeals.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Bartlett Cole.*

For respondents there was a brief and an oral argument by *Mr. Jay Bowerman.*

BENSON, J.—1. There is but one ultimate issue in this case. Did Walter H. Moore, at the time of his death, have any beneficial interest in the partnership wherein the plaintiff now seeks an accounting?

The transcript of the testimony is exceedingly voluminous, covering a wide range, discussing a series of transactions extending through a period of many years. A detailed analysis of this evidence would be impracticable and unprofitable. Briefly stated, it appears that the two brothers and their wives, starting together with an insignificant amount of property, by industry and thrift became quite

prosperous. After making their home at Moro for many years, they transferred their activities to the City of Portland, where they engaged in numerous enterprises, consisting principally of real estate transactions. During this time Walter H. Moore became president of the Oregon Bank & Trust Company, and in 1907, through mismanagement of its affairs, the bank became involved in financial difficulties, was unable to meet its obligations, and Thomas C. Devlin was appointed receiver, and thereafter began two suits against the officers of the bank to recover certain sums of money which it was alleged had been misappropriated by them. In these suits H. A. Moore was joined as a defendant, upon the theory that he was an officer of the bank. In these suits there were decrees for the plaintiff in large sums of money, which, upon appeal to this court were modified as to the amount of the recovery, and dismissed as to H. A. Moore, it being conclusively determined that he had no interest in or connection with the bank: *Devlin* v. *Moore,* 64 Or. 433 (130 Pac. 35); Id., 64 Or. 464 (130 Pac. 46).

From the time of the failure of the bank, Walter H. Moore as president, was severely criticised for his connection with the disaster, a fact which caused him great distress, and according to the testimony of H. A. Moore, America Moore and Laura H. Moore, who, with Walter H., constituted the partnership known as Moore Brothers, Walter H. proposed to the other members of the firm that, being desirous of making such restitution as lay in his power, he wanted them to convey to him such portion of the firm's assets as would represent his interest therein, so that he might in turn convey the same to Devlin for the benefit of the bank. They were reluctant to

do this, contending that they were in no way responsible for the failure or the obligations arising therefrom. However, they finally yielded to his importunities and made the necessary conveyances of their interest in properties which were accepted by Devlin at a valuation of $115,900. In consideration of such action upon their part, Walter H. from time to time made conveyance to them of his interest in the remaining assets and at the time of his death had parted with all of his interest in the firm. In addition to the positive testimony of the surviving members of the partnership, the record discloses that when execution had been issued upon certain judgments against Walter H. Moore, arising out of the bank failure, such executions were returned *nulla bona,* and supplementary proceedings were instituted against Walter H. Moore, wherein, upon being examined upon oath as to his having any property subject to execution, he testified that he did not have a dollar in money or property, and had no interest in any property then in the possession of any other person. He then narrated the circumstances of the conveyance by the defendants of the property received by Devlin, substantially as recited by the defendants, saying:

"I took the proposition up a day or two after bank closed, to turn in property to stand good for any deficit that might come from the bank paying the depositors, but they didn't want to do that; didn't feel that they had any right to do it, and didn't believe that it was their place to do it; but I stood by my convictions, and after probably a week they decided to do that, if I would agree to give up my interest in the other property."

He further testified that the conveyances were made by them as agreed, and that subsequently,

from time to time, he made conveyances to them of his interest in the remaining property, and had no further interest in the assets.

Plaintiff urges that the statements so made by Walter H. Moore are not competent evidence, and cannot be considered in this proceeding, basing his contention upon the assumption that the evidence is admissible only by virtue of Section 710, L. O. L., which reads thus:

. "The declaration, act, or omission of a deceased person, having sufficient knowledge of the subject, against his pecuniary interest, is also admissible as evidence to that extent against his successor in interest."

Plaintiff's theory is that at the time the decedent testified as above set out, such declarations were not against his interest, but, on the contrary, were made with the purpose of protecting himself and family from the consequences of what he considered unjust judgments. We might, perhaps, dispose of this proposition by remarking that the statements of the deceased themselves constitute refutation of the theory that they were designed to serve the declarant's financial interests, and, on the contrary, indicate a desire to disregard his pecuniary interest, in response to an exalted desire to clear his good name from suspicion, and to make restitution for an unintentional wrong. However, we are of opinion that the statements of Walter H. Moore are competent evidence, without relying upon the provisions of Section 710, L. O. L. The authorities recognize two classes of statements of decedents which may under certain circumstances become competent evidence in subsequent litigation. The distinction between these two groups may be best expressed by quotations

from Jones on Evidence (2 ed.), in Section 323 of which we find this language:

"In several of the preceding sections the discussion has related to the admissibility of declarations or entries made in the regular course of business and as part of the *res gestae*. In another chapter we discussed the admissibility of declarations of *parties* and those identified in interest with parties, that is, admissions. We now come to the consideration of an entirely different class of declarations, which should not be confused with those already mentioned; namely, declarations made by *strangers*, that is, by persons not in privity with the parties to the suit; declarations which are not necessarily made in the regular course of business, but which are received on the ground that they were *against the interest of such stranger* and *irrespective of the fact whether any privity exists* between the person who made them and the party against whom they are offered."

Turning now to Section 242 of the same volume, under the subtitle, "Admissions of ancestor against heir," we read this:

"The principle under discussion has often been applied in the admission of the declarations of ancestors as against their heirs. Stating the rule more broadly, it has been held that whenever the admissions of an ancestor would be admissible against him, if living, they are admissible against an heir claiming under him by descent, and are receivable in evidence against him in the same manner as they would have been receivable against the ancestor."

The distinction thus clearly announced is also recognized in Greenleaf on Evidence (16 ed.), Section 189, and 2 Wigmore on Evidence, Section 1081. It follows, therefore, that the admissions of Walter H. Moore are competent evidence, independent of

the provisions of Section 710, L. O., L. We have, therefore, the positive evidence of everyone concerned in the firm, that Walter H. Moore was not interested in the partnership at the time of his death. The other evidence in the case does not overcome the convincing power of this testimony.

We concur in the findings of the trial court and the decree is affirmed.

AFFIRMED. REHEARING DENIED.

McBRIDE, C. J., and HARRIS and BURNETT, JJ., concur.